In the Matter of CONSUMERS COAL COMPANY, Debtor.

CONSUMERS COAL COMPANY, Plaintiff,

v.

Donald C. GRAVES and Gaylord S. Stacy, Defendants.

Bankruptcy No. 3–79–550.
Adv. No. "A".

United States Bankruptcy Court,
S. D. Ohio, W. D.

May 22, 1981.

Frank M. Root, Jr., Roy H. Horn, Paul E. Zimmer, Dayton, Ohio, for debtors.

William P. Smith, Dayton, Ohio, for Danis.

Robert J. Egan, New York City, for defendants.

Douglas M. Bricker, Columbus, Ohio, for E. M. Asquith Co.

Stanley M. Billingsley, Carrollton, Ky., for Pellet Coal Export Co.

Paul D. Rice, Cincinnati, Ohio, for Gene West.

R. Edward Tepe, Cincinnati, Ohio, Richard G. Snell, Dayton, Ohio, Jacob I. Rosenbaum, Edward Brown, Cleveland, Ohio, for creditor.

ANDERSON, Bankruptcy Judge.

## PRELIMINARY STATEMENT

This matter came for hearing on 5 May 1981 upon an application for approval by the court of a proposed settlement agreement; oral arguments in open court by both proponents and parties in opposition; and, was submitted without the introduction of evidence upon memoranda submitted in behalf of the Consumers Coal Company on 19 May 1981 and of E. M. Asquith on 14 May 1981. The only facts before the court, in addition to documents not disputed, are contained in the court records, of which the court takes judicial notice. The settlement agreement speaks for itself.

## FINDINGS OF FACT

Originally, two matters were set for the Court's disposition; however, counsel for the debtor advised the Court that its Application to Sell Assets was no longer at issue because the debtor had received no viable offers to purchase said assets.[1]

Having determined that Application moot, the Court proceeded with the debtor's Application to Approve the Agreement and Settlement filed March 31, 1981.

The Settlement Agreement for which the debtor seeks this Court's approval arises out of several adversary proceedings pending between the debtor and Donald Graves and Gaylord Stacy. The latter gentlemen are the managers of Kentucky Prince Company, a wholly owned subsidiary of the debtor, Consumers Coal Company. Kentucky Prince Company is the operating entity of the debtor. Messrs. Graves and Stacy claim to be creditors of the debtor to the extent of approximately $3,266,000.00, which amount represents the balance of the purchase price due them on the sale of Kentucky Prince Company to Consumers Coal Company. As security for the purchase of Kentucky Prince, Graves and Stacy accept-

---

1. We note that S. M. Billingsley, Esq. appeared on behalf of Pellet Coal Company to argue that a valid offer had been made by the latter. The Court continued the matter and has since been presented with a separate law suit between Consumers and Pellet to litigate the validity of Pellet's alleged Contract to Purchase.

ed a pledge of Consumers Coal stock which pledge they have threatened to foreclose upon in lieu of payment of the $3,266,000.00 balance due. This threatened action has resulted in the debtor's filing of an adversary proceeding under the pending Chapter XI case in which it requested this Court permanently to enjoin Graves and Stacy from foreclosing upon their stock pledge agreement until such time as the pledge agreement has been found by the court as valid. The shareholders of Consumers instituted a similar action in United States District Court. Thus, as a result of the disputed pledge agreement, there are two pending civil actions in United States Bankruptcy Court and United States District Court involving the debtor and Messrs. Graves and Stacy. The well-informed and reasoned opinions of counsel for these parties indicate that the issues requiring resolution in these cases are long and complicated and could result in many months, if not years, of litigation.

Consumers Coal Company has filed a Plan of Arrangement in this Chapter XI proceeding. Because of disputes over the subject pledge agreement and because of a general atmosphere of controversy and disagreement over management tactics within the debtor's organization, Donald Graves and Gaylord Stacy have rejected the Plan of Arrangement; and, in the opinions of counsel, it is doubtful that a plan offered by the debtor would ever be accepted by Graves and Stacy under conditions presently existing between the two factions. Also because of the conflict within management of the debtor and in light of the pending litigation, the National Bank of Detroit, which holds a security interest on virtually all of the debtor's assets, is reticent to begin a restructuring of the loan which is the basis for its security interest in the Consumers Coal property. The debtor has emphatically represented that the anticipated restructuring of the loan from National Bank of Detroit, is a prerequisite to the funding of a feasible plan of arrangement.

The pending litigation and the uncertainty surrounding stock ownership and voting rights in the Debtor has interfered with direction to management; negotiating with creditors and interested parties; and the preparation and filing of an amended plan of arrangement so that the Chapter XI process can be implemented. This court on 31 December 1980 in entering a temporary restraining order to delay the sale of 6566 shares of Debtor's stock and wrongfully interfering with negotiations with creditors and efforts to effect acceptances of a plan of arrangement, made the following finding, to-wit:

"With regard to the defendants' motion to dismiss, made pursuant to Federal Rule of Civil Procedure 12(b), we find this Court does have subject matter jurisdiction over the issues presented. We find that this Court may protect against interference with a Chapter XI proceeding, by any entity, especially once a Plan has been filed with the Court. Consequently we may hear evidence to determine whether such conduct is occurring or may occur in the future, and we may enjoin any such conduct. Further, we find that the determination of the plaintiff's complaint will necessarily require the Court's determination of the status of Messrs. Graves' and Stacy's claim . . . ."

Because of this finding, on 28 January 1981 Donald C. Graves and Gaylord S. Stacy requested and obtained an order of this court adjourning to an undetermined time the hearing on the preliminary injunction scheduled for January 28, 1981, so that a compromise and settlement agreement could be explored among the litigants.

## CONCLUSIONS OF FACT AND DECISION

The parties to the subject Settlement Agreement represent that it will resolve the following problems which have been interfering with the Chapter XI proceedings, to-wit:

(1) The Agreement terminates the pending litigation over the pledge agreement involving the debtor's stock and thereby resolves any question as to who may file a modified plan of arrangement;

(2) The Agreement should eliminate further management disputes; consequently, there should be no further obstacles to National Bank of Detroit's restructuring of the Consumer financing;

(3) The Agreement eliminates problems involving a dissident shareholder, Mr. R. J. Peebles;

(4) With regard to the controversies over Coal Production Company of Hazard and the tipple and unit train, that entity will not acquire a lien against the debtor's property and the tipple and unit train will be reconveyed to the debtor.

The means by which the Settlement Agreement proposes to accomplish the above is through a sale of stock and assets of Consumers Coal Company to unify management and the preparation of a Plan of Arrangement to propose to creditors. The sales may occur only upon the approval of H. T. Mead, Mead Development, Donald Graves, Gaylord Stacy and this Court. The key element in the Settlement Agreement from this Court's point of view is the provision which ensures that any payments of moneys to shareholders or other insiders of the debtor will not occur if the debtor's plan of arrangement is not accepted by its creditors. Thus, we have a safeguard for creditors in the nature of an automatic voiding of the Settlement Agreement if the forthcoming plan is not acceptable to creditors in the Chapter XI proceedings.

Several of the debtor's creditors appeared in opposition to the proposed Settlement Agreement and have submitted memoranda in opposition to the same. The major objection which these creditors make to the provisions of the Agreement are, as follows:

(1) The creditors are not able to analyse the effects of the Settlement Agreement because the debtor has not furnished them such information as the amount of secured debt owing to National Bank of Detroit or A and T Manufacturing. Without this information, creditors feel they cannot accurately determine the marketability of the assets;

(2) Although the creditors acknowledge that some of their objections are better suited to the hearing on confirmation of the debtor's plan, they believe they must express those objections now because of the interdependence of the Settlement Agreement and the prospective plan. They are concerned that the approval of the Agreement now would lock creditors into the untenable position of having to accept the plan because other alternatives would be precluded;

(3) The creditors suggest that the type of ownership restructuring which will result from the Settlement Agreement is of a magnitude which only a Chapter X bankruptcy proceeding can encompass. The terms of the Agreement will provide Messrs. Graves and Stacy with approximately one-half of the Consumers stock between them by means of Mead Development, H. T. Mead and Richard Hodson divesting themselves of substantial amounts of the company's stock. The creditors suggest that a Chapter XI proceeding is not the proper vehicle by which to accomplish such a major capital restructuring;

(4) Also with regard to the capital restructure, the creditors take umbrage with the prospect that the present owners of Consumers who are being bought out will receive priority claims against the debtor for the purchase prices. This priority will result in a depletion of moneys going to creditors;

(5) The Agreement would lock Graves and Stacy into management positions.

In essence, the creditors believe that adoption of the Settlement Agreement will require adoption of the proposed plan which accompanies it because the restructuring of management and other bargains struck will preclude all other alternatives.

The creditors posited and the Court concurs the Chapter XI process does not con-

template court mandated capital restructuring of a corporation. The practical effect of this principle, however, is not so facilely administered. Apparently, the creditors believe that because a Chapter XI proceeding is an improper format for capital restructure, this Court should not approve the Settlement Agreement presently before it. An approval by this court would merely be an approval to the extent that the Agreement will expedite and facilitate the Chapter XI proceedings. Approval should not be deemed an adoption of the terms of the Agreement or a sanction of its contents. We would note and concur with counsel for the debtor that the proposed plan of arrangement which was annexed to the Settlement Agreement and sent to creditors is not the plan which the debtor will finally propose. This suggested Plan is not before the Court. The debtor believes a far better plan may now be composed due to its increased ability to bargain with National Bank of Detroit for a restructuring of its loan terms. The major thrust of the objections at present are addressed to the unacceptability of a Plan which is not before the court and presently justiciable. In light of the debtor's representation that this plan will not be proposed for confirmation, we find many of the objections are premature.

We glean from the creditors' remarks that they believe, perhaps, some provisions of the Settlement will prevail notwithstanding the creditors' rejection of the prospective plan. Thus, the objections and concerns are not accurately based upon fact—the fact that no term of the Agreement will be valid unless the plan which the debtor proposes in the near future is accepted and approved by this Court according to law.

E. M. Asquith presented a memorandum to the Court urging that "the fact is the parties who control the debtor will be contractually held to present a plan which contemplates diversion of debtor's assets to pay off shareholders, which contemplates liquidation of certain insider claims without a hearing to determine amount and priority of such claims and which contemplates classification of unsecured creditors into two classes, outsiders and insiders, with insiders seemingly being favored." (Brief of E. M. Asquith in Opposition to Requested Findings of Fact and Conclusions of Law with Respect to Agreement of Compromise and Settlement, filed May 14, 1981 at p. 3.) Although some of these conclusions take the terms of the settlement to the extreme, we must state that even if they are accurate and the agreement does lock the debtor into offering a plan with these elements, this does not require Asquith to accept the plan. If and when the proposed plan is rejected by the creditors the Settlement Agreement will expire and will no longer affect the debtor. We would make a caveat to the creditors not to prejudge a plan which may never exist. The debtor now believes there will result a very favorable plan for creditors. We would suggest that the parties wait to see if this is so and not close their minds to any proposal which is feasible and to the best interests of unsecured creditors.

Asquith also urges that "the proposed Order approving the Settlement appears to be an effort to obtain a predetermination by this Court that the proposed Amended Plan to be filed by the Debtor is in the best interests of creditors so that any hearing on this issue at confirmation will be no more than perfunctory." Id. at p. 4. This argument is a reiteration of the suggestion at May 5, 1981 hearing, that approval of the Agreement will somehow be a covert approval of the plan. We would categorically clarify now that our approval of the settlement agreement is only to the extent that it will result in the removal of obstacles to the Chapter XI proceedings. The court does not sanction the substance of its terms—nor is it implied that any plan to be submitted will be deemed in the best interest of creditors if it is patterned after this Agreement.

Based upon the arguments of counsel for the debtor and the objecting creditors and upon the law governing Chapter XI proceedings, this Court is constrained to approve the Settlement Agreement herein presented to the extent that said agreement will remove impediments to the Chapter proceedings. It is obvious that the Settlement Agreement addresses the impediments of controversy and conflicts among

management personnel, and of the pending complex litigation in both this Court and the United States District Court. We would point out that our analysis of this Agreement might be quite different if it were to result in the immediate sale of assets or transfer of stock. The manner in which the Agreement is presented will not consummate any such transaction; instead such transactions can only occur upon the confirmation by this Court of the debtor's plan to be proposed in the near future. The safeguard of creditor scrutiny of the plan satisfies this Court's interest in the debtor's assets and stock.

As stated from the bench, the court does not mean to overlook the expressed arguments against the terms of the Agreement. Indeed, we think the arguments pose major issues. However, we emphasize that those issues more properly must be raised at the hearing on confirmation of a plan, under the legal safeguards afforded for such purposes.

*ORDERED, ADJUDGED AND DE-CREED* that the settlement agreement to the extent that it settles pending litigation, removes and prevents interference with the prosecution of the Chapter XI process, and promotes the best interests of the unsecured creditors should be, and is hereby, approved.